**UNITED STATES of America**

v.

**Robert Harry THOMAS, Appellant.**

**No. 91–5719.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 10, 1992.

Decided April 21, 1992.

**1112**

James V. Wade, Federal Public Defender, D. Toni Byrd (argued), Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Theodore B. Smith, III (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Before: GREENBERG and COWEN, Circuit Judges, and GREEN, District Judge *.

* Honorable Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal involves the validity of an upward departure under the Sentencing Guidelines. Because we find that the factors relied on by the district court in departing upward were adequately considered by the Sentencing Commission in formulating the Guidelines, we will vacate the sentence and remand for resentencing.

### I.

Between June 1988 and March 1990, Robert Thomas purchased two shotguns, two rifles, and a revolver from a gun shop in Cumberland County, Pennsylvania. In purchasing these five firearms, Thomas was required to complete four Bureau of Alcohol, Tobacco and Firearm (ATF) forms.[1] ATF Form 4473 requires a gun purchaser to certify that he has never been convicted previously of an offense punishable by a term of imprisonment in excess of one year. Thomas, who had a lengthy criminal record, falsely stated on the ATF forms that he had never been convicted of such an offense.

In April 1991, Thomas was charged with four counts of making false statements in connection with the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6) (1988). As part of a negotiated plea agreement, Thomas pleaded guilty to these four counts in exchange for the government's agreement that it would not charge him with the more serious crime of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988). A conviction for firearm possession would have subjected Thomas to a mandatory sentence of at least fifteen years imprisonment as an armed career criminal under 18 U.S.C. § 924(e)(1) (1988).

In calculating the appropriate sentence under the Sentencing Guidelines, the presentence report prepared by the probation office determined that Thomas had fifteen

---

1. Only four forms were completed for the purchase of the five firearms, because it appears from the record that one form was completed in conjunction with the purchase of the two rifles.

criminal history points, thus placing him in category VI, which is the highest criminal history category. The points were for the following offenses:

Three points for a 1977 forgery conviction (two counts) in Cumberland County, PA in 1977. Served fifteen months and paroled. Parole revoked and Thomas served nine more months.

Three points for a 1978 burglary conviction in Cumberland County, PA. Served one year concurrently with previous forgery sentence. Parole revoked and Thomas served nine more months concurrently with previous conviction.

Three points for a 1985 conviction for forcibly breaking into a U.S. post office (four counts). Served twenty-five months.

Three points for a 1985 burglary conviction (four counts of burglary, four counts of theft by unlawful taking, four counts of receiving stolen property, four counts of conspiracy) in Cumberland County, PA. Served concurrently with previous conviction for breaking into post office.

Three points for a 1985 burglary conviction (one count of burglary, one count of theft by unlawful taking, one count of receiving stolen property, one count of criminal conspiracy) in Adams County, PA. Served concurrently with previous conviction for breaking into post office.

Presentence Rpt. at 4–7. The probation office did not add any points for the following offenses:

Burglary in Cumberland County, PA, in August 1974 at the age of fifteen. Committed to Loysville Youth Development Center for eight months.

Burglary (two counts) in Cumberland County, PA, in August 1975 at the age of sixteen. Committed to youth center for nine months.

Petty theft in Alachua County, FL, in January 1980, for which Thomas served thirty-two days.

*Id.* at 4, 7. The two burglary convictions were not counted because Thomas was a juvenile when he committed those crimes. The petty theft conviction in 1980 was not counted, apparently because Thomas was not represented by an attorney at the time of that conviction and the probation office had only limited details about the conviction when it prepared the presentence report.

Based on a total offense level of ten within criminal history category VI, the sentencing table of the Guidelines dictated a sentence of twenty-four to thirty months imprisonment.[2] United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Pt. A (Nov. 1991). At sentencing, the government sought a departure upward to sixty months imprisonment, arguing that it had foregone prosecuting Thomas for the more serious crime of firearm possession by a convicted felon. The district court departed upward and sentenced Thomas to forty-eight months imprisonment:

An upward departure appears warranted based on the apparent inadequacy of the defendant's criminal history category. The defendant's criminal history appears to be under-represented because it does not account for two burglaries the defendant committed as a juvenile which resulted in his commitment to an institution. The Criminal History Score does not adequately take into account the likelihood that the defendant will commit additional crimes in the future and that while under supervision for local crimes, the defendant had his parole revoked on at least two occasions. These appear to be factors that were not adequately taken into account by the Sentencing Com-

---

**2.** The offense level of twelve was reduced by two levels because Thomas accepted responsibility for his criminal conduct. United States Sentencing Commission, *Guidelines Manual*, § 3E1.1(a) (Nov.1991). As part of the plea agreement, Thomas stipulated that the revolver "was not possessed solely for lawful, sporting,

recreational or collection purposes." App. at 15. Thus, Thomas was precluded from receiving a six level reduction under section 2K2.1(b)(2) of the Guidelines. With such a reduction, the range of permissible sentences would have been six to twelve months. U.S.S.G., Ch. 5, Pt. A.

mission in formulating the sentencing guidelines.[3]

App. at 78.

At issue in this case is whether an upward departure could be based on Thomas' juvenile convictions, likelihood of recidivism, and parole revocations. Assuming arguendo that a departure on these grounds *was not* proper, the government contends that the district court could properly depart upward because Thomas could have been charged with firearm possession by a convicted felon, a crime which would have carried a mandatory fifteen year sentence. Assuming arguendo that a departure *was* proper, Thomas challenges the general reasonableness of a sixty percent departure from the thirty month maximum sentence under the Guidelines to the forty-eight month sentence which was imposed. We have jurisdiction to hear this appeal under 18 U.S.C. § 3742(a) & (e) (1988).

## II.

In general, a district court is allowed to depart from the prescribed sentencing range when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (1988). *See also* U.S.S.G. § 5K2.0, p.s. When it is clear that the Sentencing Commission has given adequate consideration to a factor relating to some aspect of a defendant's criminal past or current offense, a departure is not permitted.[4] *See United States v. Kikumura,* 918 F.2d 1084, 1098 (3d Cir.1990). As the Supreme Court recently stated:

**3.** The district court referred to Thomas' two juvenile burglaries. In fact, Thomas committed three burglaries while a juvenile, but two were consolidated.

**4.** Departures are only intended for atypical cases. The introduction to the Guidelines Manual states:
> [T]he Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often. This is because the guidelines, offense by offense, seek to take account of those factors that the Commission's data indicate made a

Construing the plain language of the Guidelines Manual and the governing statute, we conclude that it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range or ... on a factor that the Commission has expressly rejected as an appropriate ground for departure.

*Williams v. United States,* — U.S. —, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992); *see also United States v. Aguilar–Pena,* 887 F.2d 347, 353 (1st Cir.1989) ("Where the guidelines have taken matters into account, the district court is not then at liberty to depart, notwithstanding that the judge's independent weighing of the relevant factors might differ substantially from the Commission's.") (citation omitted). We have plenary review of the district court's justifications for its departure. *Kikumura,* 918 F.2d at 1098; *see also* 18 U.S.C. § 3742(f) (1988).

At the outset, we must consider under what circumstances an upward departure is permitted once a defendant such as Thomas has reached the highest criminal history category (category VI). The Guidelines explain:

> The Commission contemplates that there may, *on occasion,* be a case of *an egregious, serious criminal record* in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

significant difference in pre-guidelines sentencing practice.... While Chapter Five, Part K lists factors that the Commission believes may constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly infrequent.

U.S.S.G. Ch. 1, Pt. A(4)(b), p.s.

U.S.S.G. § 4A1.3, p.s. (emphasis added). The Court of Appeals for the Second Circuit has interpreted this section of the Guidelines as allowing a departure beyond category VI only in "extraordinary circumstances." *United States v. Coe,* 891 F.2d 405, 413 (2d Cir.1989). " '[O]nly the most compelling circumstances—for example, prior misconduct accompanied by wanton cruelty' would justify a [section] 4A departure above Category VI." *Id.* (quoting *United States v. Cervantes,* 878 F.2d 50, 55 (2d Cir.1989)).

In the case before this court, we question whether Thomas' criminal record was so "egregious," "serious" or "extraordinary" as to warrant departing beyond category VI. Thomas had fifteen criminal history points, just two over the thirteen point minimum for category VI. It is noteworthy that categories I to V are all comprised of two or three criminal history points.[5] Although we are reluctant to engage in the kind of extrapolation favored by other courts in extending the sentencing table, *see, e.g., United States v. Schmude,* 901 F.2d 555, 560 (7th Cir.1990); *United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990), Thomas' fifteen points would fall within the two or three point range of category VI were such a range to exist. Given the nature of Thomas' criminal record, we cannot say that his criminal history is "significantly more serious than that of most defendants in the same criminal history category." U.S.S.G. § 4A1.3, p.s. This is certainly not a case in which the defendant's criminal history points put him well off the sentencing table. *See, e.g., United States v. Lewis,* 954 F.2d 1386 (7th Cir.1992) (defendant's twenty-two criminal history points justify upward departure). Therefore, an upward departure beyond category VI is presumptively unjustified in this case, unless there clearly exist circumstances "not adequately taken into consideration by the Sentencing Commission" which would warrant a departure. 18 U.S.C. § 3553(b). As the following discussion will indicate, we do not find such circumstances to exist.

### A.

The district court's first basis for departure was its contention that Thomas' criminal history was underrepresented since no points were added for the 1974 and 1975 burglaries which he committed as a juvenile. Under the Sentencing Guidelines, only three types of juvenile offenses can be considered in the calculation of criminal history points: 1) three points are added for each offense in which the defendant was convicted as an adult and received a prison sentence of more than one year and one month; 2) two points are added for each offense in which the defendant was sentenced to at least sixty days confinement and was released within five years of the current offense; and 3) one point is added for each offense in which the defendant received a sentence within five years of the current offense. U.S.S.G. § 4A1.2(d). It is undisputed that neither of Thomas' juvenile convictions could have been counted in the calculation of his criminal history points under section 4A1.2(d).

Our previous examinations of the scope of section 4A1.2(d) have found it to include a wide range of juvenile convictions. *See, e.g., United States v. Davis,* 929 F.2d 930 (3d Cir.1991); *United States v. Bucaro,* 898 F.2d 368 (3d Cir.1990). In the case currently before us, however, we address a different issue, that is, whether the district court could depart upward based on juvenile offenses clearly not within the Guidelines. We must consider whether the Guidelines' delineation of three types of countable juvenile offenses is intended to preclude the consideration of other juvenile offenses.

In *United States v. Samuels,* 938 F.2d 210 (D.C.Cir.1991), the Court of Appeals for the District of Columbia Circuit held that the defendant's five juvenile convictions, which were not included in the calculation of his criminal history points under

---

5. The sentencing table divides the criminal history categories as follows: category I (0, 1 points); category II (2, 3 points); category III (4, 5, 6 points); category IV (7, 8, 9, points); category V (10, 11, 12 points); category VI (13 or more points).

section 4A1.2(d), could not be the basis for an upward departure. *Id.* at 214–15. The court found it significant that the Guidelines specifically allow upward departures based on foreign offenses, tribal offenses, and expunged convictions, all of which are not counted as criminal history points, but made no provision for uncountable juvenile convictions. *Id.* at 215. However, the D.C. Circuit noted that a departure would be appropriate if the juvenile convictions were for conduct similar to the instant offense. *Id.* (referring to U.S.S.G. § 4A1.2, comment. (n.8)). We believe *Samuels* correctly interpreted the Guidelines, and we adopt it as the rule in this circuit.

The government attempts to counter *Samuels* with two decisions: *United States v. Ryan,* 866 F.2d 604 (3d Cir.1989) and *United States v. Nichols,* 912 F.2d 598 (2d Cir.1990). In *Ryan,* a simple possession case, this court considered whether an upward departure could be based on the quantity and purity of the drugs which were possessed, even though the relevant guidelines did not specify that such a departure was appropriate. The defendant argued that the guidelines for other drug-related offenses considered quantity and purity as relevant sentencing factors, and thus the omission of quantity and purity from the possession guideline (U.S.S.G. § 2D2.1) indicated that the Sentencing Commission expressly rejected their consideration.[6] We held that a departure was justified despite the silence of the guideline relating to possession.

Not only did the Commission indicate that a factor listed under one guideline may be relevant to sentencing under a different guideline making no reference to such factor, but it expressly stated that its failure to specifically reject various factors was designed to *permit* departure, not, as Ryan proposes, to foreclose it. *Ryan,* 866 F.2d at 607–08 (emphasis in original). Thus, *Ryan* stands for the proposition that a court can borrow factors from other guidelines when the applicable guideline is silent. *Id.* at 607.

The case currently before this court is not like *Ryan,* since the guidelines applicable to juvenile offenses are far from silent. Indeed, section 4.A1.2(d) specifies the three situations in which juvenile convictions can be included in a criminal history calculation. The fact that the Sentencing Commission specified which juvenile convictions were countable evinces the Commission's intent that all other juvenile convictions could not be considered, either in a criminal history calculation or an upward departure, except in a few exceptional cases. "Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records." U.S.S.G. § 4A1.2 comment. (n. 7). Were we to allow a departure based on non-countable convictions, we would essentially strip section 4.A1.2(d) of its meaning.

The government also relies on *United States v. Nichols,* in which the Second Circuit held that an upward departure was proper when the defendant had previously received lenient punishment for an attempted murder committed as a juvenile and no punishment for a murder for which he was not convicted. 912 F.2d at 604. Given the dissimilarity between the attempted and completed murder in *Nichols* and the burglaries committed by Thomas, *Nichols* is distinguishable, because the commentary to the Guidelines expressly provides for departure when "a defendant with an extensive record of *serious, assaultive conduct* ... received what might now be considered extremely lenient treatment in the past." U.S.S.G. § 4A1.3, comment. (emphasis added); *but see Samuels,* 938 F.2d at 216 ("We do not, however, interpret section 4A1.3 to allow consideration of the leniency of prior juvenile sentences that could not be used in computing the criminal history category."). The attempted murder and completed murder in *Nichols* clearly would be considered "serious, assaultive conduct." Although Thomas' juvenile convictions were by no means inconsequential, they certainly involved conduct less serious

**6.** After *Ryan* was decided, section 2D2.1 was amended to allow the consideration of quanti-

ties greater than five grams in cocaine possession cases. U.S.S.G.App. C., amend. 304.

than the conduct in *Nichols*.[7] Unlike the juvenile convictions in *Nichols*, Thomas' convictions did not go unpunished or lightly punished; he was committed to a youth center for eight months for one burglary, and nine months for the other burglary. Finally, *Nichols* involved a departure which raised the defendant's criminal history from category III to category VI. As we have stated, Thomas has already reached category VI, and departures beyond category VI are reserved for extraordinary cases.

After the parties briefed and argued the case before us, the Court of Appeals for the Seventh Circuit appeared to reach a conclusion contrary to the D.C. Circuit's holding in *Samuels*. In *United States v. Gammon*, 961 F.2d 103 (7th Cir.1992), the defendant's eight juvenile convictions were not counted in his criminal history calculation because they occurred more than five years prior to the instant offense. *Id.* at 107. The district court, however, relied on the eight juvenile convictions in departing upward. Although the Seventh Circuit acknowledged the contrary holding of *Samuels*, the court held that the juvenile convictions could serve as a basis for departure because "[t]he exclusion of Gammon's prior juvenile adjudications from his criminal history category would serve merely to obscure his serious history of criminality and the likelihood that he would commit crimes in the future." *Id.* at 108.

We find *Gammon* to be partially distinguishable from the case before us. Six of the eight juvenile convictions in *Gammon*

were for burglary and theft, which were sufficiently similar to the defendant's instant offenses, the most serious of which was armed bank robbery. *Id.* at 108. In contrast, Thomas' juvenile convictions for burglary bear no resemblance to his current conviction for providing false information on ATF forms. In this respect, we do not disagree with the holding of *Gammon* that a departure may be based on similar juvenile convictions. However, we find *Gammon* to be irreconcilable with *Samuels* to the extent that *Gammon* allows a departure to be based on "prior convictions excluded from the criminal history category because [they are outdated] that are neither similar to the instant offense nor evidence of criminal livelihood ... when they illustrate a significant history of criminality." *Id.* at 107. Because *Gammon*'s consideration of nonsimilar juvenile convictions contravenes the language of the Guidelines, *see* U.S.S.G. § 4A1.2, comment. (n.8)., we will follow the D.C. Circuit's holding in *Samuels*.[8]

In conclusion, Thomas's juvenile convictions for burglary do not fit within the three types of countable sentences under section 4A1.2(d) nor are they similar to his current conviction. Consistent with the holding of *Samuels*, we find that the district court erred in basing an upward departure on juvenile crimes not specified in section 4A1.2(d) of the Sentencing Guidelines.

### B.

■ The second factor on which the district court based its upward departure was

---

**7.** Under the Guidelines, "burglary of a dwelling" is considered a "crime of violence." U.S.S.G. § 4B1.2; *see also United States v. Salmon*, 944 F.2d 1106, 1129 (3d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). However, neither of Thomas' juvenile burglaries involved a dwelling.

**8.** The courts of appeals are split as to whether an upward departure can based on nonsimilar, outdated, adult convictions. *Compare United States v. Connor*, 950 F.2d 1267, 1274–75 (7th Cir.1991) (nonsimilar, outdated, adult convictions may be appropriate grounds for departure); *United States v. Aymelek*, 926 F.2d 64, 72–73 (1st Cir.1991) (same); *United States v. Rus-*

*sell*, 905 F.2d 1439, 1444 (10th Cir.1990) (same); *United States v. Carey*, 898 F.2d 642, 645–46 (8th Cir.1990) (same) *with United States v. Leake*, 908 F.2d 550, 554 (9th Cir.1990) (upward departure can never be based on nonsimilar, outdated, adult convictions). The Supreme Court declined to resolve this circuit split in *Williams*, 112 S.Ct. at 1122.

We need not address whether an upward departure may be based on nonsimilar, outdated, *adult* convictions, since that issue is not before us. We only hold that nonsimilar, outdated, *juvenile* convictions cannot form the basis of an upward departure.

the likelihood that Thomas would commit crimes in the future. Thomas argues that the likelihood of recidivism is already built into the calculation of criminal history points, since it is implicit that defendants in the highest criminal history category will have the greatest likelihood of committing crimes in the future. Therefore, he contends that an upward departure on this ground is inappropriate.

We need not scrutinize the principles underlying criminal history points, since the Guidelines provide sufficient instruction on how the likelihood of recidivism should be considered: "A departure under this provision is warranted when the criminal history category *significantly* underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. (emphasis added). The Guidelines provide many examples of what circumstances would justify an upward departure, including: a previous sentence (e.g., a foreign or tribal offense) not used in computing the criminal history category; an extremely lenient sentence for a previous serious offense; a pending trial or sentencing on another charge at the time of the instance offense; prior similar misconduct established by a civil adjudication or not resulting in a criminal conviction; several previous foreign sentences for serious offenses; a prior consolidated sentence of ten years for a series of serious assaults; large scale fraudulent misconduct; or commission of the instant offense while on bail or pretrial release for another serious offense. *Id.* After reviewing the record, we find that Thomas' previous sentences do not resemble any of these examples.[9]

██ There is no evidence that Thomas' previous adult convictions [10] were lightly punished or not punished at all, *see United States v. Lee*, 955 F.2d 14 (5th Cir.1992), or so similar to the instant offense of filing false ATF forms as to justify an upward departure, *see United States v. Molina*, 952 F.2d 514, 519 (D.C.Cir.1992) (upward departure could be based on "the presence of similarity between a defendant's current and past crimes."). Although either of these circumstances would have justified an upward departure, neither applies here. Moreover, Thomas' fifteen criminal history points do not greatly exceed the thirteen point minimum for criminal history category VI, thus we cannot conclude that a thirty month sentence, which is the maximum for his offense level, would have been too lenient in light of Thomas' criminal past.

Our review of the district court's upward departure is hampered by the court's failure to specify why it concluded that Thomas' fifteen criminal history points "significantly" underrepresented the likelihood of recidivism. The district court merely stated that "[t]he Criminal History Score does not adequately take into account the likelihood that the defendant will commit additional crimes in the future." App. at 78. Such a statement without more is insufficient:

> A recital of past convictions followed by the statement that the Guidelines do not adequately reflect this history or deter recidivism, as here, amounts to little more than an expression of personal disagreement with the Guidelines. The court must take the additional step of identifying those specific aspects of the

---

9. We give no weight to Thomas' acknowledgment in the plea agreement that an upward departure "may be warranted" because his criminal history category significantly underrepresented the seriousness of his criminal history or the likelihood of committing future crimes. App. at 15. A concession by a defendant in a plea agreement which does not have adequate factual support in the record cannot support an upward departure. *Cf. United States v. White*, 888 F.2d 1252, 1253–54 (8th Cir.1989) (district court not bound by plea agreement which specified that defendant had no prior felony convic-

tions if defendant actually had such a conviction).

10. All but one of Thomas' previous convictions were for burglary. It is arguable that Thomas' 1977 forgery conviction is similar to the current offense of filing false ATF forms. Because the district court appeared to base its departure on the totality of Thomas' criminal record, rather than simply the forgery conviction, we do not address whether the two crimes are so similar as to justify a departure.

defendant's criminal history not adequately considered by the Guidelines. *United States v. Jones,* 905 F.2d 867, 870 (5th Cir.1990). *See also Molina,* 952 F.2d at 520 (district court must explain why defendant's record was "sufficiently unique to justify departure"); *United States v. Cornog,* 945 F.2d 1504, 1514 (11th Cir.1991) (district court's failure to state specific reasons for departure requires remand); *United States v. Sanchez,* 933 F.2d 742, 745 (9th Cir.1991) (describing "necessity for the district court to identify clearly the relevant factors to a departure"); *United States v. Chester,* 919 F.2d 896, 901 (4th Cir.1990) (district court's failure to identify "aggravating or mitigating circumstance" underlying downward departure requires remand). Since we cannot ascertain why the district court regarded the criminal history score as "significantly" underrepresenting the likelihood of Thomas committing crimes in the future, we will remand this issue to the district court for a more detailed explanation.

### C.

■ The district court's third basis for departing upwards was its finding that "while under supervision for local crimes, the defendant had parole revoked on at least two occasions." App. at 78. The record indicates that Thomas was paroled in May 1979 for both the 1977 forgery and 1978 burglary convictions. In May 1980, parole was revoked for both offenses, and Thomas was reincarcerated. He was reparoled in February 1981. Because the Sentencing Commission adequately provided for parole revocations in the calculation of criminal history points, the district court erred in basing an upward departure on this ground.

For parole and probation revocations, the Guidelines specify that the original sentence and the sentence imposed after probation is revoked are added and counted as if they were one sentence. U.S.S.G. § 4A1.2, comment. (n. 11). "By this approach, no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked." *Id.* The presentence report assessed three points for both of Thomas' convictions in which parole was revoked. Because the maximum number of criminal history points has already been assessed for these two convictions, a departure would be unjustified.

■ In certain circumstances, parole revocations which have already been included in the criminal history calculation can form the basis for an upward departure. Certainly, a defendant with a long history of violating parole would be a prime candidate for an enhanced sentence, particularly if his instant offense is similar to the offenses for which he had been paroled in the past. Thomas is not such a defendant. Although technically there were two parole revocations in Thomas' criminal record, parole was revoked only once since he was paroled at the same time for both of the underlying offenses. Moreover, the parole revocation occurred more than a decade ago. During his most recent period of parole supervision, "[t]he defendant presented a favorable adjustment to supervision prior to the expiration of his sentence," Presentence Rpt. at 6, thus suggesting that Thomas now would be able to abide by the terms of parole.

In conclusion, we find none of the district court's three stated reasons for departure—Thomas's juvenile convictions, the likelihood of recidivism, and the parole revocations—to be justified grounds for exceeding the twenty-four to thirty month sentencing range dictated by the Guidelines.

### III.

The government attempts to justify the district court's upward departure on a fourth independent ground: Thomas could have been charged with possession of a firearm by a convicted felon, a crime which carries a mandatory fifteen year sentence. Because the government decided to forego a prosecution for this more serious crime, it contends that a departure beyond the thirty month Guidelines sentence was permissible. To justify the use of the fifteen year benchmark, the government suggests that

Thomas acquired the guns to use on his common-law wife following a domestic dispute.[11] *See* Gov't Brief at 10–11.

■■■ Although the district court did not explicitly state in its written judgment that the foregone fifteen year sentence was a basis for the upward departure, we believe Thomas' firearm possession played a major, if not predominant, role in the court's sentencing decision. Prior to the imposition of sentence, the district court stated:

> In this case I'm very concerned about the connotations of your going out and purchasing something like a .357 magnum right after one of these flare-ups. I too can't credit your statement that you didn't know you couldn't own guns. I just don't find that an acceptable statement, and I agree ... that anybody with any common sense knows that the question is on the [ATF] form for a reason. So that it does seem to me that the government has foregone a charge that it would have brought against you that would involve a 15–year mandatory minimum and that that is a consideration that is not reflected in the guidelines. And in addition I believe the history even without that would warrant an upward departure....

App. at 72. We hold that the district court erred by departing upward to compensate for the government's decision not to charge Thomas with a more serious crime.[12]

■■■ Unlike the three grounds for departure which we have already examined, this upward departure involves the offense level, rather than the criminal history. Criminal history departures under the Guidelines may be based on many types of convictions which otherwise are not countable in the computation of a defendant's criminal history. *See, e.g.,* U.S.S.G. §§ 4A1.2(h) (foreign sentences); 4A1.2(i) (tribal court sentences); 4A1.2(j) (expunged convictions); 4A1.2 comment. (n. 6) (conduct underlying reversed, vacated, or invalidated convictions). This same broad discretion is not available in offense level departures, since nowhere do the Guidelines permit consideration of uncharged offenses. In cases involving firearm possession, the Guidelines specifically provide for an upward departure when: 1) the number of firearms significantly exceeds fifty; 2) the offense involves machine guns, destructive devices, military-type assault rifles, or nondetectable firearms; 3) the offense involves large quantities of armor-piercing ammunition; or 4) the offense poses a substantial risk of death or bodily injury to multiple persons. U.S.S.G. § 2K2.1, comment. (n. 16). None of these four circumstances apply to this case,[13] and thus there was no basis for an upward departure.

According to the government, the fifteen year sentence mandated by the armed career criminal statute gives the district court considerable leeway in its sentencing. Like the sword of Damocles, the foregone fifteen year punishment is dangled over Thomas' head at the time of sentencing. We strongly disapprove of this approach to sentencing. Whether or not Thomas "got a break" when he was charged with a less serious offense is immaterial. *See United States v. Robison,* 904 F.2d 365, 372–73 (6th Cir.) (district court's belief that defendant "got a break" in receiving a light sentence for a previous conviction did not

---

**11.** A letter from Thomas' wife to the sentencing court refutes the government's allegation:

> We have had a few domestic problems in the past and I have called the police but, only because I was upset with him and mostely [sic] just to get back at him.... [H]e has *never* physically abused me in anyway [sic] and I'm not afraid of him. He has never done anything to me for me to be afraid of him.

App. at 47 (emphasis in original).

**12.** Thomas argues that the upward departure was improper since he was not given notice that a departure would be based on the foregone charge of firearm possession. We believe Thomas had such notice, since the plea agreement provided that the government would bring to the district court's attention "all relevant information with respect to the defendant's background, character and conduct *including the conduct that is the subject of the charges which the Government has agreed to dismiss.*" App. at 16–17 (emphasis added).

**13.** We also find that none of the general grounds for departure which are set forth in section 5K of the Guidelines apply to this case. *See* U.S.S.G. §§ 5K1.1–2.16, p.s.

justify departure in instant case), *cert. denied,* —— U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). There is a major difference between saying that Thomas could have been charged with possession of a firearm and his actually having been charged and convicted of this offense. It would be a dangerous proposition to allow district courts to base upward departures on crimes that were not actually charged. *Cf. United States v. Brady,* 928 F.2d 844, 851 (9th Cir.1991) ("We would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted."); *United States v. Cantu–Dominguez,* 898 F.2d 968, 971 (5th Cir.1990) (departure cannot be based on "history of arrests that did not result in convictions"); U.S.S.G. § 4A1.3, p.s. (prior arrest record not ground for criminal history departure).

Fairness dictates that the government not be allowed to bring the firearm possession crime through the "back door" in the sentencing phase, when it had previously chosen not to bring it through the "front door" in the charging phase. *See United States v. Payne,* 940 F.2d 286, 293 (8th Cir.) (Heaney, J., concurring and dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) (courts should not allow uncharged conduct to become "the tail that wags the dog of the substantive offense"); *United States v. Miller,* 910 F.2d 1321, 1332 (6th Cir.1990) (Merritt, C.J., dissenting) (government should not be permitted "to indict for less serious offenses which are easy to prove and then expand them in the probation office."), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Moreover, such a "back door" maneuver would be particularly inappropriate in the case before us since the Guidelines do not specifically provide for an upward departure based on uncharged crimes.

In *United States v. Mobley,* 956 F.2d 450 (3d Cir.1992), a case involving firearm possession by a convicted felon, this court examined the permissibility of a two-level enhancement for stolen firearms under section 2K2.1(b)(2) of the Guidelines. This court upheld the use of the enhancement even though the government did not charge the defendant with the more serious crime of receiving or transporting a stolen firearm, 18 U.S.C. §§ 922(i) or (j) (1988), since the government could not prove that the defendant knew the gun was stolen. *Id.* at 459, n. 1 (Mansmann, J., dissenting). The government's "end run" was tolerable in *Mobley* since that case involved a mandatory *enhancement* clearly specified in the Guidelines. The case currently before us involves a discretionary *departure* in which the Guidelines are silent as to whether an upward departure can be based on an uncharged crime.[14] In light of the lack of guidance by both Congress and the Sentencing Commission and the fact that departures are reserved for exceptional cases, we will not allow the government to take a "convenient detour" by seeking additional punishment for an uncharged crime, "unfettered by the constraints of producing admissible evidence and proving its case beyond a reasonable doubt." *Id.* at 461.

The case before us is similar to *United States v. Faulkner,* 952 F.2d 1066 (9th Cir.1991). In *Faulkner,* the defendant pleaded guilty to five bank robberies, in exchange for the government's agreement to dismiss three other bank robbery charges and not to bring future charges on five uncharged bank robberies. *Id.* at 1068. The Court of Appeals for the Ninth Circuit concluded that the district court could not base an upward departure on the eight dismissed or uncharged bank robberies:

> The great majority of federal criminal cases are resolved by plea agreements pursuant to which the defendant pleads guilty to some counts in exchange for the government's agreement to dismiss or not to charge other counts. That system

---

**14.** This silence distinguishes the case currently before us from *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which the Court upheld a state law clearly requiring a mandatory minimum sentence when there was a finding that a defendant "visibly possessed a firearm" during the commission of certain felonies.

is a crucial tool in preventing the flood of criminal cases now overwhelming courts from completely inundating them. To allow judges to depart from the Guidelines on the basis of counts that have been dropped pursuant to plea agreements would severely undermine the incentive of defendants to enter into plea bargains.

*Id.* at 1070; *see also United States v. Castro–Cervantes*, 927 F.2d 1079, 1082 (9th Cir.1990) ("[F]or the court to let the defendant plead to certain charges and then be penalized on charges that have, by agreement, been dismissed is not only unfair; it violates the spirit if not the letter of the bargain."). In the case before us, Thomas pleaded guilty to filing false ATF forms in exchange for the government agreeing not to prosecute him for a more serious crime. To allow an upward departure to be based on a foregone charge would "undermine the incentive of defendants" in this circuit to enter into plea agreements.

The second basis for the departure in *Faulkner* is also relevant to the case before us. At the time of the district court's sentencing in *Faulkner*, the defendant was also awaiting sentencing in state court for false imprisonment after a plea of nolo contendere. The district court reasoned that had the defendant been sentenced for false imprisonment prior to the date of the bank robberies to which he had pleaded guilty in federal court, he would have been a career offender under section 4B1.1 of the Guidelines, and thus subject to a significantly higher sentence. *Id.* at 1069. Finding that the defendant could have received a sentence of 210 to 262 months as a career offender, the district court departed upward from a Guidelines range of sixty-three to seventy-eight months and sentenced him to 144 months imprisonment. *Id.* at 1068–69. On appeal, the Ninth Circuit rejected a departure based on this "analogy" to the career offender provisions, since the defendant had not actually been judged to be a career offender at the time of sentencing. *Id.* at 1072–73.

Unlike the ordinary criminal history provisions, [the career offender provisions] do not function as a sliding scale fit for incremental measurements. Rather, they function as an on/off switch. Once the prerequisites for becoming a career offender are met, the sentence takes an extraordinary leap; *both* the base offense level *and* the criminal history category simultaneously increase. No other enhancement in the guidelines operates that way. *Sui generis* provisions, by their very nature, are not useful as analogues.

*Id.* at 1073 (emphasis in original).

 Like the career offender provisions of the Guidelines, the armed career criminal statute, 18 U.S.C. § 924(e), operates as an "on/off switch." Once a person has three previous convictions for a violent felony or a serious drug offense, a conviction for firearm possession automatically results in a mandatory fifteen year sentence. Without an actual conviction for firearm possession, the armed career criminal statute does not come into play in the sentencing phase, and thus should not indirectly form the basis for an upward departure through analogy. Drawing on the language of *Faulkner*, we conclude that "[t]he harshness of the [armed career criminal] remedy explains the absolute requirement of a final conviction" for illegal firearm possession. 952 F.2d at 1073.

As a policy matter, we do not believe that our decision in this case will force government attorneys to reevaluate their charging decisions in the future. The government implies that by prohibiting sentencing courts from considering uncharged crimes, we are opening a Pandora's box in which government attorneys will hereinafter charge criminal defendants with the crime carrying the maximum possible punishment. At oral argument, counsel for the government intimated that in the future, he might not "err on the side of leniency" in his charging decisions. Consequently, Thomas' windfall will come at the expense of similarly situated defendants who have yet to be indicted. We believe the government has overstated the problem.

■ Charging decisions do not occur in a vacuum. Government attorneys have extraordinary discretion in their charging decisions, yet they must exercise this discretion with one eye on promoting justice and one eye on winning their cases as efficiently as possible. *Cf. United States Attys' Manual* § 9–2.164 (Oct. 1, 1988) ("In order to promote the fair administration of justice, as well as the perception of justice, all U.S. Attorneys should charge in indictments and informations as few separate counts as are reasonably necessary to prosecute fully and successfully and to provide for a fair sentence on conviction."). Although the government's reasons for not charging Thomas with a more serious crime are not known to us, it is irrelevant that the government might have been motivated by altruism.[15] Government attorneys should be commended for seeking lenient punishment when leniency is appropriate. However, their job is not to "err on the side of leniency," but to promote justice by prosecuting wrongdoers. Yet justice would not be served were we to allow Thomas to be punished for a crime with which he was never charged.

The plea agreement in this case was not a one-sided deal. The government benefitted in terms of time and resources saved as a result of Thomas' decision to plead guilty to the lesser offense. There is also no guarantee that Thomas would have been convicted for the more serious crime of firearm possession, despite the apparent similarity between the charged and uncharged crimes. Moreover, as part of the plea agreement, Thomas agreed that the government could institute an action under the Armed Career Criminal Act "in the event that [Thomas] commits any federal, state or local offense or violates any term of supervised release or any Court Order imposed upon him after the date hereof." [16] App. at 18. This is no small concession on Thomas' part, since technical violations of the terms of supervised release are not uncommon. Thus, Thomas' punishment for his crime will continue well beyond the actual time of incarceration which is imposed.

■ In no way should our opinion be read as downplaying Thomas' past or current criminal conduct. Thomas has a fairly lengthy criminal record, and unfortunately, previous incarceration has not deterred him from committing crimes after being released from prison. However, sentencing decisions are based on not only the defendant's criminal record but also the crime with which he was actually charged. Thomas was charged with providing false information on ATF forms, not possession of a firearm by a convicted felon.[17] Al-

---

**15.** Counsel for the government stated at the sentencing hearing:

I think the government has given up a great deal in this case. I had what I would view as a very strong armed career criminal case that would not take—be particularly challenging for a lawyer to try. I forewent that prosecution and that 15 year mandatory minimum sentence because I had some questions in my mind as to whether that sentence was appropriate for this particular individual. I tried to look at the individual rather than merely the possible mandatory minimum sentence and the crime itself. You know, there is a lot of pressure on us to generate stats in these cases, and I forewent that statistic looking at him personally.

App. at 64.

**16.** In order to preclude Thomas from arguing that a future prosecution violates the double jeopardy clause, the plea agreement states:

In agreeing to plead guilty to an information charging four counts of violating Title 18, United States Code, Section 922(a)(6), the de-

fendant specifically acknowledges that none of these offenses constitutes conduct which would be an *essential element* of a subsequent prosecution [for illegal firearm possession] under Title 18, United States Code, Section 922(g).

App. at 15 (emphasis added). Thus, the plea agreement views the crimes of filing false ATF forms and illegal firearm possession as different, since different elements are required for each crime.

**17.** Filing a false ATF form to acquire a firearm and illegal firearm possession are related crimes when a convicted felon is involved. However, the mere fact that two crimes are related does not justify an automatic upward departure whenever the lesser of the two crimes is charged. As the Guidelines state:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to

though filing false government forms is undoubtedly a serious crime, particularly when it relates to the acquisition of firearms, we believe that exposure to a thirty month sentence, which is the maximum under the Guidelines for Thomas' offense level and criminal history, will be sufficient punishment. We will reverse and remand on this issue.[18]

## IV.

■■■ Since we have found that the district court improperly departed upward, we do not reach Thomas' contention that the extent of the departure was unreasonable. In sentencing cases, the Supreme Court recently held that a remand is not necessary when a district court relies impermissibly on a factor in departing upward if "the district court would have imposed the same sentence absent the erroneous factor" and the extent of the departure is reasonable. *Williams,* 112 S.Ct. at 1121. However, having found all of the district court's grounds for departure to be unjustified, a remand is clearly required.[19] We will vacate the sentence and remand for resentencing consistent with this opinion.

GREENBERG, Circuit Judge, concurring.

I join in Judge COWEN's opinion but write separately to express an additional

point.[1] I agree with him that the implicit basis for the departure was that Thomas avoided the mandatory minimum 15 year sentence provided in 18 U.S.C. § 924(e)(1). Indeed, the government in its brief urges that its decision to forego charging Thomas with an offense punishable by this mandatory sentence "is a circumstance not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." I also agree with the government that the "incontrovertible facts" established that Thomas was subject to that sentence by reason of his violation of 18 U.S.C. § 922(g)(1). In my view the only way Thomas could have avoided the 15 year sentence, if he had been properly charged, would have been on the basis of either an inexplicable foul-up at trial or jury nullification. But yet he was not charged as he could have been.

Why is this so? Without doubt it is because the prosecutor determined that the 15 year sentence was too harsh. Thus, we are confronted with an attempt to justify the departure, which I agree must ultimately fail. The real problem in this case is that the prosecutor has declined to enforce a law which represents an important policy determination by Congress. Thomas seems to me to be a classic case of a person to whom the mandatory 15 year penalty

which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A(4)(b).

Were we to allow an upward departure whenever a defendant who possessed a firearm was charged with filing a false ATF form, the "heartland" of the two crimes would merge. *Cf. United States v. Tsai,* 954 F.2d 155, 164–65 (3d Cir. 1992) (crime of illegal arms exportation encompasses threat to national security, thus departure on this basis is improper). Had this been the intent of Congress and the Sentencing Commission, there would have been no reason to enumerate two separate crimes.

**18.** The government also attempts to justify the district court's departure by noting that the presentence report assessed only three points for Thomas' four post office break-ins, which had been consolidated. Had these four break-ins been prosecuted and sentenced separately, the government argues, Thomas could have received as many as ten criminal history points.

Because the district court's upward departure was not based on the consolidation of the post office break-ins, we do not address whether a departure on this ground would have been appropriate.

**19.** The *Williams* majority agreed with the dissent's conclusion that " '[w]here all the reasons enunciated by the district court to support departure are found to be invalid,' the appellate court 'must set aside the sentence and remand the case.' " 112 S.Ct. at 1121 (quoting *Williams,* 112 S.Ct. at 1128 (White, J., dissenting)).

**1.** I do not understand the opinion to preclude in all circumstances the possibility of a departure predicated on conduct which could have been the basis for additional charges but was not. Here there is a special situation in that the government expressly declined to prosecute Thomas under 18 U.S.C. § 922(g)(1) and, indeed, agreed not to prosecute him under that section so long as Thomas did not commit a further offense or violate the terms of supervised release.

should be applied. As Judge Cowen notes, notwithstanding Thomas's long criminal record, he purchased five firearms. Furthermore, the investigation leading to this prosecution seems to have originated from Thomas's acts of domestic violence. Thomas seems to me to be a bomb waiting to explode. What was his reason for acquiring five firearms, one of which was a Taurus .357 Magnum revolver? While I do not suggest that the prosecutor was without discretion in this matter, I do believe that it should be a rare case in which a prosecution under 18 U.S.C. § 922(g)(1), of a multiple-offense offender possessing a firearm, should be declined. Thus, I believe that the courts should not participate in convoluted procedures to thwart congressional will as expressed in 18 U.S.C. § 924(e)(1). While I realize that mandatory sentences are not popular with some judges, it is for Congress to determine the circumstances requiring such sentences. In the future, the problem presented by this case can be avoided if the important public policy represented by 18 U.S.C. § 924(e)(1) is honored.