NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 11-1923
———

UNITED STATES OF AMERICA

v.

GEORGE E. JONES,

Appellant
———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1:09-cr-183-01)
District Judge: Honorable James M. Munley
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 5, 2011

Before: HARDIMAN, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 6, 2011)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

George E. Jones appeals from the District Court's imposition of a 151 month

sentence following his guilty plea. Jones argues that the District Court imposed an

unreasonable sentence by committing both procedural and substantive error.

Procedurally, Jones argues that the District Court erred by (1) failing to adequately address colorable mitigation arguments made in support of a downward variance, (2) relying on "questionable and/or inappropriate" considerations, and (3) limiting defense counsel's opportunity to present argument during the sentencing hearing. Substantively, Jones argues that the Court erred by both failing to give adequate weight to the factors under 18 U.S.C. § 3553(a) and by incorrectly concluding that all of the drugs attributed to him were for distribution, rather than personal use.[1] For the reasons that follow, we will affirm the sentence imposed by the District Court.

## I.

Because we write solely for the parties, we recount the facts and proceedings only to the extent required for resolution of this appeal. On January 27, 2009 and March 16, 2009, Jones was contacted by two separate confidential informants seeking to purchase crack cocaine. Jones sold $40 worth of crack cocaine to the first informant and $60 worth of crack cocaine to the second. Following these two transactions, local law enforcement officers obtained a search warrant for Jones and the car from which he made the transactions. Upon executing the warrant, officers recovered 100 baggies of crack cocaine with a total weight of 28.2 grams, as well as a digital scale, police scanner,

---

[1] Jones also argues that the District Court abused its discretion by refusing to grant a downward departure under U.S.S.G. § 5k2.13. However, as this Court has repeatedly recognized, a district court's discretionary denial of a departure motion is not subject to appellate review. *See United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006).

unused baggies, and 284.9 grams of marijuana. On January 26, 2010, Jones entered a guilty plea to distribution of cocaine base, in violation of 21 U.S.C. § 841(a).

After Jones entered his guilty plea, the probation department prepared a presentence report ("PSR") in which it determined that Jones had a Category VI criminal history based on his eighteen criminal history points.[2] The PSR determined that Jones's Total Offense Level was 29, which reflected both a six-point enhancement for Jones's career offender status under U.S.S.G. § 4B1.1,[3] and a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). Jones's combined criminal history and offense level yielded a recommended imprisonment range of 151 to 188 months. Jones did not dispute this determination.

Jones's sentencing hearing was on March 29, 2011. Prior to the hearing, Jones filed three detailed sentencing memorandums wherein he requested downward departures under both U.S.S.G. §§ 4A1.3(b)(3) and 5K2.13. Jones argued for a departure under U.S.S.G. § 4A1.3(b)(3) on the grounds that the Guidelines overrepresented the seriousness of his criminal history. Jones stressed that the vast majority of his prior convictions occurred nine to ten years prior to the instant offense, when he was just a teenager; that the quantity of drugs involved in the prior offenses was very small; and that

---

[2] Jones received fifteen points for five convictions (including two for possession with intent to deliver cocaine) occurring between July 1999 and August 2000, two points for a 2004 conviction, and one point for a 2008 conviction.

[3] Jones's career offender status was based on his two prior convictions for possession with intent to distribute cocaine.

3

approximately ninety percent of the 29.14 grams of crack cocaine attributed to him in the instant offense was for personal use, not distribution. Based on these circumstances, Jones argued that his situation was very similar[4] to the defendant in *United States v. Merced*, No. 2:08-cr-000725, 2010 WL 3118393 (D.N.J. Aug. 4, 2010), where the court issued a sentence well below the Guidelines.

Jones argued for a downward departure under U.S.S.G. § 5K2.13 based on the conclusion of a forensic psychiatrist that Jones's crack addiction, which began at the age of thirteen due to a drug-infested home environment, significantly diminished his capacity to control his actions with respect to the possession of crack cocaine.

Jones also requested a downward variance based on the factors set forth in 18 U.S.C. § 3553(a).[5] In particular, Jones argued that the nature, circumstances, and

---

[4] "[T]he thrust of Jones's sentencing arguments" was that he "was similarly situated to the *Merced* defendant, who received a variance that led to a sentence far below what the career offender guidelines called for [92 months instead of the recommended range of 188 to 235 months]." Appellant's Reply Br. at 2. Jones argued that "both Merced and Jones were street level dealers as opposed to drug kingpins who moved very large quantities of drugs and engaged in violence," and that, "[i]f anything," he was "even more deserving of a substantial variance than Merced was." *Id*. at 3. Jones noted, for example, that whereas Merced distributed 49.1 grams of crack cocaine in a "single transaction," Jones's two transactions to the informants comprised a total of just 0.94 grams. *Id*. Jones argued, therefore, that a sentence of 151 months would create an unwarranted sentencing disparity between him and the *Merced* defendant.

[5] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the defendant's history; (2) the need to reflect the seriousness of the crime, adequately deter criminal conduct, protect the public, and provide training or medical care; (3) the types of sentences that could be imposed; (4) the established sentencing range; (5) any pertinent sentencing policies; (6) the need to avoid sentencing disparities; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1)–(7).

seriousness of his offense closely matched the situation addressed by the district court in *Merced*, and that a disparity in the sentence between he and the *Merced* defendant would be unwarranted under § 3553(a)(6). Based on these requested departures and variances, Jones argued for a sentence between 27 and 37 months.

At the sentencing hearing, the District Court denied Jones's requested departures and variance, but imposed the minimum sentence (151 months) recommended under the Guidelines. Thereafter, Jones timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"Our responsibility on appellate review of a criminal sentence is limited yet important: we are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). "At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (*en banc*). The abuse of discretion standard applies to both inquiries. *Id.*

Appellate review of a criminal sentence proceeds in two stages. *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). First, we determine whether the District Court committed a "significant procedural error." *Gall*, 552 U.S. at 51. One such error, relevant to the case at hand, is a failure "to consider the § 3553(a) factors . . . or failing to adequately explain the chosen

5

sentence." *Id*. We must, therefore, determine that a district court gave "meaningful consideration" of any "sentencing argument which has colorable legal merit and a factual basis." *United States v. Ashburn*, 502 F.3d 313, 329 (3d Cir. 2007). While the "fact-bound nature of each sentencing decision" precludes development of a "uniform threshold" for making this determination, *Tomko*, 562 F.3d at 567, we have stated that a "rote statement of the § 3553(a) factors" will not suffice. *United States v. Sevilla*, 541 F.3d 226, 232 (3d Cir. 2008) (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007)). "A sentencing court need not," however, "make findings as to each factor if the record otherwise makes clear that the court took the factors into account." *United States v. Lessner*, 498 F.3d 185, 203 (3d Cir. 2007).

If the District Court's decision is procedurally sound, we then consider the substantive reasonableness of the sentence. *Gall*, 552 U.S. at 51. In reviewing substantive reasonableness, "[w]e may not reverse the district court simply because we would have imposed a different sentence." *United States v. Wise*, 515 F.3d 207, 218 (3d. Cir. 2008). As this Court has repeatedly recognized, "'reasonableness is a range, not a point,'" and "[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *Id*. (quoting *Cooper*, 437 F.3d at 332 n.11). Accordingly, so long as a sentence is procedurally sound, we will affirm "unless no reasonable sentencing court would have

6

imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

## III.

### (A) PROCEDURAL ERROR

Jones argues that the District Court committed three procedural errors. He argues that the Court (1) failed to meaningfully consider his arguments for a downward variance under § 3553(a), (2) relied upon inappropriate considerations in reaching its decision, and (3) limited his opportunity to respond to the Government's argument during the sentencing hearing. We address each argument in turn.

#### (1) Meaningful Consideration

Jones argues that the District Court failed to meaningfully consider several of his key arguments, including the remoteness in time of his prior convictions, the small quantity of drugs involved in his current and prior offenses, and the similarity between his situation and that of the defendant in *Merced*, 2010 WL 3118393. We disagree. Based on the considerations for assessing meaningful consideration set forth by the Supreme Court and this Court, we have no doubt that the District Court meaningfully considered each of Jones's arguments. We begin with a brief discussion of these decisions, and then turn to the facts at hand.

In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court made it clear that the brevity or length of a sentencing court's decision, and the specificity with which a court addresses a party's arguments, is largely a matter of the "judge's own professional

7

judgment." 551 U.S. at 356. The district court in *Rita* ruled that the Guidelines'

recommendation was not "inappropriate," but did not specifically address the defendant's

three arguments for a downward variance. *Id.* at 358–59. While the district court's

reasoning was notably brief, the Court found no procedural error since it was clear from

the record that the sentencing judge had "listened to," was "fully aware of,"

"understood," and "considered" Rita's three arguments. *Id.* at 358. While the Court

"acknowledge[d] that the judge might have said more," it found that "[w]here a matter is

as conceptually simple as in the case at hand and the record makes clear that the

sentencing judge considered the evidence and arguments, we do not believe the law

requires the judge to write more extensively." *Id.* at 359.

Of this Court faced a similar scenario in *United States v. Tomko*, 562 F.3d 558 (3d

Cir. 2009). There, the Government "exhaustively asserted" that a failure to incarcerate

the defendant would undermine the deterrent value of the law at issue. *Tomko*, 562 F.3d

at 568. While the district court never specifically addressed this deterrence argument, it

stated "immediately *after* the Government made [its deterrence argument]" that a

sentence without incarceration would address "the sentencing goals of punishment,

*deterrence* and rehabilitation." *Id.* at 569 (emphases added). Since the record made clear

that the sentencing judge "heard the Government's impassioned plea" and "considered

general deterrence" prior to handing down its sentence, we found no error. *Id.*

Of particular relevance to the case at bar is our decision in *United States v.*

*Jackson*, 467 F.3d 834 (3d Cir. 2006). There, it was alleged that the district court failed

8

to meaningfully consider the defendant's argument that the Guidelines overrepresented his criminal history. *Jackson*, 467 F.3d at 842. We rejected this contention since the sentencing court justified its sentence based on the defendant's "seven prior adult convictions" and the fact that two of the offenses involved violence. *Id*. While the judge did not specifically reference the defendant's argument that his criminal history was overrepresented by the Guidelines, we reasoned that reference to the defendant's seven prior adult convictions and the acts of violence "indicate[d] that the Judge did not believe Jackson's criminal history to be over-represented in the Guidelines calculation." *Id*.; *see also Lessner*, 498 F.3d at 203 (finding meaningful consideration despite "scant" discussion of § 3553(a) factors where sentencing judge engaged in "extensive and thoughtful questioning . . . over two days of hearings").

Finally, it is instructive to consider the circumstances where we have found a lack of meaningful consideration. In *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007), we found a lack of meaningful consideration because "[t]he *only* explanation" that the sentencing court provided was that its sentence was "reasonable in view of the considerations of section 3553(a)." *Grier*, 475 F.3d at 571 (emphasis added). Similarly, in *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008), the sentencing judge never addressed Sevilla's nonfrivolous arguments "other than to say that it had 'considered all of the [§] 3553(a) factors.'" *Sevilla*, 541 F.3d at 232.

With these prior decisions as our calculus, we proceed to discuss Jones's arguments. First, Jones asserts that the District Court failed to meaningfully consider his

9

argument that the Category VI criminal history score overrepresents the seriousness of his criminal history since "15 of the 18 criminal history points" accrued nine to ten years prior to the instant offense—when Jones was just a teenager. Appellant's Br. at 15. According to Jones, the District Court "entirely ignored" this mitigating circumstance. *Id*. The record, however, proves otherwise. After acknowledging that "we talked a lot about the overrepresentation of the Defendant's criminal record," the Court stated its concern that Jones "not only has two qualifying offenses, he also has eight juvenile adjudications and seven adult criminal convictions," including one for "punching somebody in the face twice for no stated reason." App. 130–31, 140. Even if it did not expressly reference Jones's remoteness-in-time argument, the record makes it obvious that the Court found the *quantity* of Jones's offenses, and their drug-related nature, to be more important than their relative remoteness. In light of *Rita*, *Tomko*, *Jackson*, *Grier*, and *Sevilla*, this is sufficient to demonstrate the Court's meaningful consideration of the remoteness argument.

Jones also argues that the District Court failed to consider his argument regarding the small quantity of drugs involved in his prior offenses. In his memoranda, and at the sentencing hearing, Jones argued that the small quantity of drugs in his prior and instant offenses highlights that he is not a "kingpin" dealer, but just a street-level dealer ravaged by an uncontrollable drug addiction. Appellant's Reply Br. at 3–6. While Jones faults the District Court for not expressly discussing the small quantity of drugs in his prior offenses, it is clear that the District Court found the high quantity of drugs in the instant

10

offense to warrant greater weight in its determination and to run counter to Jones's claim of being primarily an addict. As the District Court noted, "it is the Court's experience that hardcore crack cocaine users generally do not possess large quantities of drugs, which in this case had a value of $2,000." App. 130. The District Court also expressed incredulity regarding Jones's claim that the twenty-eight grams of crack cocaine in the instant offense, which Jones had "in a hundred different baggies," was for personal use. *See id.* at 129–30. Moreover, while the Court clearly recognized that Jones developed a severe drug addiction as a young child,[6] it expressed concern that Jones was "blaming his criminal activities on his substance abuse," and stated that this reflected a "failure to take responsibility for his past offenses." *Id.* 124. Accordingly, we find the record sufficient to demonstrate that the District Court meaningfully considered Jones's argument.

Finally, Jones argues that the District Court's "complete silence" regarding his argument that he was similarly situated to the defendant in *Merced* proves a lack of meaningful consideration. Appellant's Br. at 16. According to Jones, the sentencing court "did not so much as mention the name 'Merced,'" and made "no attempt to reconcile or distinguish" the *Merced* court's grant of a downward variance under circumstances very similar to Jones's. *Id.* Again, we disagree.

---

[6] After defense counsel pointed out that Jones's drug addiction was more severe than most "because of it occurring at such an early stage and being continuing throughout," the Court noted, "[i]t is terrible. I mean, he was a child when all of this began." App. 138.

As our precedent makes clear, there was no requirement for the District Court to specifically mention the *Merced* decision by name so long as the record and context make clear that it considered Jones's argument. *See Rita*, 551 U.S. at 358–59; *Tomko*, 562 F.3d at 568–69. Here, Jones argued the *Merced* case at length, and it is clear that the judge "listened to," "considered," and "was fully aware of" the argument. Indeed, after Jones's attorney finished a lengthy discussion of *Merced*, the Court asked: "So what is the point? *I understand the case.*" App. 119 (emphasis added). Jones's counsel responded by clarifying that "the point" is that the *Merced* court's reasoning "appl[ies] equally, if not with more force, to my client, because all of those things can be said about my client." *Id.* Not only was the court fully aware of the *Merced* argument, it addressed the underlying issue of sentencing disparities in its explanation. Whereas Jones's attorney had argued that a refusal to grant a downward variance would create a sentencing disparity between Jones and the *Merced* defendant, the Court was ultimately more concerned that permitting the variance would create an unwarranted sentencing disparity between Jones and *other* defendants. As the Court noted, "[m]any of the Defendants who qualify as career offenders have far fewer criminal history points [than Jones] and still receive the significant sentences contemplated by Congress." *Id.* at 141. While Jones clearly disagrees with the logic and brevity of the Court's reasoning, the record is more than sufficient to demonstrate meaningful consideration.

### (2) Allegedly Inappropriate Considerations

12

We now turn our attention to Jones's argument that the District Court committed procedural error by relying on "questionable and/or inappropriate factors." Appellant's Br. at 19. Jones argues—without citation to legal authority—that the Court impermissibly relied on his juvenile offenses as a factor supporting the seriousness of his criminal history. Jones reasons that, because the Guidelines do not count his juvenile offenses towards his criminal history score, the District Court erred by relying on them as a justification for not permitting a downward variance. This argument, however, is at odds with this Court's decision in *United States v. Thomas*, 961 F.2d 1110 (3d Cir. 1992). In *Thomas*, we accepted the proposition that a district court could support an *upward departure* on the basis of *non-countable* juvenile offenses that were similar in nature to the offense at issue. 961 F.2d at 1117. There is, therefore, no *per se* bar on considering non-countable juvenile offenses. Moreover, it stands to reason that if non-countable juvenile offenses can be used to *increase* a defendant's sentence above the Guidelines' recommended range, a district court can consider non-countable juvenile offenses to justify a sentence within the Guidelines' recommended range. Accordingly, we cannot say that the District Court committed procedural error by considering Jones's juvenile offenses.

Jones also argues that the Court erred by relying on the Government's characterization of his prior offenses as demonstrating a "history of violence." Jones argues that this was an error because none of his prior offenses meet what he argues to be the requisite threshold for "crime[s] of violence." Appellant's Br. at 21. We disagree.

13

The District Court's agreement with the Government that Jones's criminal history included violent acts that reflected the defendant's character was a factual finding within the Court's expertise and discretion.

### *(3) Jones's Opportunity to Present at Hearing*

Jones argues that the District Court committed a third procedural error by limiting his attorney's opportunity to respond to the Government during the hearing. We disagree. The only concrete example[7] that Jones points to is the Court's instruction to Jones's attorney to limit to two minutes his response to one of the Government's arguments. Since the Government itself only took two minutes in making its argument, the Court's request was reasonable. Moreover, as the Government correctly states in its brief, Jones had already filed "three extensive sentencing memoranda" prior to the hearing and his attorney had already had an "unlimited opportunity to argue his position" at the hearing. Appellee's Br. at 23.

### (B) SUBSTANTIVE ERROR

We now turn to Jones's claim that the District Court committed substantive error by failing to give adequate weight to the section 3553(a) factors. The thrust of Jones's argument is that the Court failed to consider the nature, circumstances, and seriousness of Jones's offense in the context of the similarly situated defendant in *Merced*, and, as a

---

[7] While Jones raises several other purported examples of the Court "attempting to limit" his argument at the hearing, *see* Appellant's Reply Br. at 11–12, the examples merely reflect instances where the Court was sufficiently aware of the argument at hand to not warrant further discussion, or the Court disagreed with Jones's characterization of the evidence.

result, gave insufficient attention to the need to avoid sentencing disparities under § 3553(a)(6). While we have no doubt that a district court could reasonably agree with Jones's sentencing argument concerning *Merced*, it does not follow that the District Court's position was unreasonable. As we have recognized, "'reasonableness is a range, not a point,'" and if the sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *Wise*, 515 F.3d at 218 (quoting *Cooper*, 437 F.3d at 332 n.11).

Here, the District Court imposed the minimum sentence recommended under the Guidelines for a defendant in Jones's position. While Jones disagrees with the Court's rejection of his argument about avoiding an unwarranted disparity with the *Merced* defendant, the Court's reasoning on this factor was clear, logical, and well within the broad range of reasonableness. The Court observed that Jones's eighteen criminal history points put him well above the thirteen-point threshold for Category VI and that "[m]any of the Defendants who qualify as career offenders have far fewer criminal history points and still receive the significant sentences contemplated by Congress." App. 141. The Court thus concluded that granting Jones a downward variance would create sentencing disparities with "other Defendants who have been found guilty of similar conduct." *Id*. Accordingly, because we cannot agree that "no reasonable sentencing court would have imposed the same sentence," *Tomko*, 562 F.3d at 568, we will affirm.

Jones also argues that the District Court substantively erred by concluding that all of the drugs found on Jones were for distribution, rather than personal use. We have no

trouble, however, concluding that the Court did not err[8] in discrediting Jones's argument that over ninety percent of the crack cocaine was for personal use. The fact that Jones was found with $2,000 worth of crack cocaine packaged in 100 baggies as well as tools used for drug distribution (e.g., a digital scale) is more than sufficient to justify the Court's finding.

## V.

Having found no procedural or substantive error, we will affirm the District Court's judgment of sentence.

---

[8] When it comes to factual matters, we will only find an abuse of discretion where the sentencing court's finding was "clearly erroneous." *Wise*, 515 F.3d at 217.