**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles M. RAIMONDI, Jr.,**
**Defendant–Appellant.**

No. 97–3995.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1998.

Decided Nov. 4, 1998.

 

---

**6.** The claim survives to the extent it is founded upon Ramco's state-court motion to correct errors.

Timothy M. O'Shea (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Ralph A. Kalal (argued), Kalal & Associates, Madison, WI, for Defendant–Appellant.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Under a negotiated plea agreement, Charles Raimondi, Jr. ("Mr. Raimondi" or

"Mr. Raimondi, Jr.") pleaded guilty to conspiring to distribute cocaine, and the government agreed to dismiss charges of cocaine possession with intent to distribute and firearm possession while a felon. The district court rejected the plea agreement. Nevertheless, Mr. Raimondi persisted in his plea of guilty. At sentencing, the court determined that a three-level upward departure outside the range of the sentencing guidelines was appropriate. Mr. Raimondi now appeals this sentencing determination. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Charles Raimondi, Jr. lived and worked with his father, Charles Raimondi, Sr., who owned the Last Resort on Fresh Lake in western Wisconsin. The resort included a few cabins and a two-story building; on the first floor of that building was the Last Resort Tavern and on the second floor were the living quarters of the father and son. Both men worked at the tavern. Starting around December 1994, Mr. Raimondi, Jr. sold cocaine at the tavern along with the usual tavern fare. His source fronted the cocaine to him; he would obtain the cocaine on credit and would pay back the purchase price to his source after he had sold that batch. However, Mr. Raimondi, Jr. enjoyed using cocaine himself and giving it to others free of charge. In fact, after one cocaine party he hosted, a friend attending the party reported that a pile of cocaine 4–5 inches tall and 5–7 inches in diameter was left on a table for all to use. This habit of treating his many friends cut into Mr. Raimondi, Jr.'s profit margin. His debts to his Chicago suppliers began mounting. When his father learned of his son's cocaine dealing and increasing debts and realized that he could not pay off his son's

debts himself, Raimondi, Sr. went into the drug business with his son in an attempt to increase the sales volume and to generate sufficient income to pay off the debts.

Mr. Raimondi, Jr. purchased (with cash and cocaine) a .40 caliber Beretta semi-automatic handgun in February 1995. He carried it in the small of his back and flashed it around to his customers. Shortly after obtaining the handgun, he threatened two customers with it—first Donna Klenk, who owed him $400 for cocaine, and then Bruce Smetak, who came to the Last Resort several times a week for cocaine but was slow to pay for it. Once, when Smetak complained about the poor quality of an eighth ounce of cocaine, Mr. Raimondi pulled out his weapon and told him to pay up. Another person who obtained free cocaine from Mr. Raimondi, Jr. was Leslie Barillas. She saw him threaten a man with the Beretta and knew that he had shown the gun to her five year-old son when Mr. Raimondi was visiting them. Barillas also returned home once to find Mr. Raimondi, Jr. smoking cocaine with her son's sixteen year-old babysitter.

By early April 1995, Raimondi, Sr. learned about the Beretta and took the gun away from his son. The father and son quarreled, and Mr. Raimondi, Jr. moved out of the Last Resort and into Donna Klenk's cabin. Shortly thereafter, Mr. Raimondi, Jr. was arrested at Klenk's cabin on a state probation warrant.

### B. Proceedings in the District Court

On January 29, 1997, a federal grand jury charged Mr. Raimondi, Jr. with being a felon in possession of a firearm.[1] Later, in a superseding indictment, Mr. Raimondi was charged with conspiracy to distribute cocaine under 21 U.S.C. §§ 841 & 846, possessing cocaine with intent to distribute under 21 U.S.C. § 841 and being a felon in possession

---

1. The indictment charged that, between February and April 1995, in the Western District of Wisconsin, Charles Raimondi, Jr., having been convicted of a felony, did knowingly and unlawfully possess a firearm, specifically, a Beretta .40 caliber handgun which had previously traveled in interstate commerce, in violation of 18 U.S.C.

§ 922(g)(1). The statute makes it unlawful for anyone who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess any firearm or ammunition which has been transported in interstate commerce. See 18 U.S.C. § 922(g)(1).

of a firearm under 18 U.S.C. § 922(g)(1).[2] On September 3, 1997, he entered into a plea agreement and pleaded guilty to Count 1, the conspiracy charge. The government, in turn, agreed to dismiss the remaining charges.

The presentence report ("PSR") stated that the Raimondis, Jr. and Sr. together, sold or gave away 737 grams of cocaine. It determined that Mr. Raimondi, Jr.'s base offense level therefore was 26. The PSR recommended the addition of two levels under § 2D1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G.") to reflect that Mr. Raimondi possessed the Beretta in connection with the cocaine conspiracy.[3] It also recommended a downward adjustment of three levels for acceptance of responsibility under § 3E1.1. The resulting total offense level was 25. Based on a criminal history

category of VI, the PSR calculated the guideline imprisonment range for Mr. Raimondi at 110–137 months.

At the November 12, 1997 sentencing hearing, the district court asked why Mr. Raimondi was not charged under 18 U.S.C. § 924(c).[4] The assistant United States attorney replied that his office believed that the charged drug crimes provided sufficient punishment. The district court disagreed and rejected the plea agreement. *See* U.S.S.G. § 6B1.2, p.s.[5] It granted the defendant a one-day continuance to consider the ruling.[6]

The next day, despite the rejected agreement, Mr. Raimondi confirmed his guilty plea. The court then stated it was considering an upward departure under U.S.S.G. § 5K2.0, p.s.,[7] based on Mr. Raimondi's use

**2.** Raimondi, Sr. was also charged with conspiracy to distribute cocaine and with possessing cocaine with intent to distribute it on June 15, 1995. He pleaded guilty to the conspiracy charge. He has not appealed.

**3.** U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." An application note adds: "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3).

**4.** 18 U.S.C. § 924(c) provides: "Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years...."

**5.** Section 6B1.2, p.s., states in pertinent part:

(a) In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

*Provided,* that a plea agreement that includes a dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.

**6.** *See* § 6B1.3, a Policy Statement that states:

If a plea agreement pursuant to Rule 11(e)(1)(A) or Rule 11(e)(1)(C) is rejected, the court shall afford the defendant an opportunity to withdraw the defendant's guilty plea. Rule 11(e)(4), Fed. R. Crim. P.

**7.** Section 5K2.0 is a Policy Statement setting forth the grounds for departure. It states:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." ... [T]his subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.,* as a specific offense characteristic or other adjustment), if the

of a firearm in relation to his drug dealing. The court noted that Mr. Raimondi not only possessed but also used and brandished the weapon in furtherance of the conspiracy. Those factors may warrant departure upward, it stated. Sentencing was then rescheduled for a week later.

At the reconvened sentencing hearing held November 21, the government argued against the court's suggested upward departure. It maintained that "possession" of a firearm under § 2D1.1(b)(1) ought to be read broadly and that, given the typical behavior of those who traffic in drugs, Mr. Raimondi's use of his weapon could not be characterized as exceptional or unusual so as to remove it from the "heartland" of cases to which § 2D1.1(b)(1) applies. Mr. Raimondi also argued for no upward departure.

The district court rejected the positions of the government and the defendant. In its view, the threatening use of the gun, while Mr. Raimondi was using cocaine, and his reckless behavior that could have resulted in the discharge of the weapon amounted to aggravated use of the firearm which "takes this out of the heartland because it was reasonable to foresee grave bodily injury based upon the threats which this defendant presented to those persons in his presence." R.119 at 36. The court further stated that "[i]t is one of those 2K2.1 determinations [in] which indeed there has been demonstrated a substantial risk of bodily injury to multiple [individuals]." [8] *Id.* Explicitly disavowing that it was departing upward because of the government's failure to seek a conviction under § 924(e), the court concluded:

> This Court departed because of the fact that the guideline did not reflect the seriousness of that significant criminal activity in which this defendant was involved and has determined that there are those facts and circumstances taking this out of the heartland and that for a 924(c) there is

that five years which is a reasonable guideline for it.

*Id.* at 37–38. The district court then departed upward three levels, from 25 to 28, and sentenced Mr. Raimondi, whose criminal history category was VI, at the high end of the sentencing range to 175 months of imprisonment.

## II

## DISCUSSION

### A. The Contentions of the Parties

#### 1.

Mr. Raimondi submits that his handling of the firearm was typical conduct in drug transactions and was not "out of the heartland" of drug activities. He relies on *United States v. Otis*, 107 F.3d 487 (7th Cir.1997). In that case, we reversed an upward departure based on the defendant's use of a gun in drug dealing. According to Mr. Raimondi, this court said in *Otis* that guns are tools of the trade in the drug business and that Otis' conduct in that case therefore was covered by § 2D1.1. Indeed, notes Mr. Raimondi, in *Otis* shootings occurred, and yet no upward departure was justified. In this case, he reminds us, there were no shootings. In Mr. Raimondi's view, the district court's distinction between possessing and brandishing a weapon is artificial and should not be allowed as the basis for an upward departure. He also asserts that the real motivation for adding three levels to his sentence was to punish him for violating 18 U.S.C. § 924(c), an offense for which, at the election of the government, he was not indicted.

Mr. Raimondi further asserts that the district court failed to give him adequate notice of the grounds for the intended departure. Specifically, the district court never indicated when it gave notice that it would rely on U.S.S.G. § 2K2.1. These provisions were mentioned only when the court pronounced sentence. This omission, he contends, does

---

court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

**8.** Section 2K2.1 of the Guidelines governs firearms offenses. It sets forth the base offense levels for such offenses and the increases or

decreases in offense levels when certain offense characteristics are present. Application note 16 of the guideline states that an upward departure may be warranted when "the offense posed a substantial risk of death or bodily injury to multiple individuals." U.S.S.G. § 2K2.1 comment. (n.16).

not comport with the obligation of the district court to notify him of the specific ground upon which the court intends to depart upward. *See Burns v. United States*, 501 U.S. 129, 131, 138–39, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). Mr. Raimondi also claims the district court erred by basing the departure on § 2K2.1, which deals with firearm offenses, not drug offenses in which a firearm is used. Nor, Mr. Raimondi contends, does his conduct fit application note 16 of § 2K2.1, which approves an upward departure when the offense either involved more than 50 firearms or involved military-type assault weapons or large quantities of armor-piercing ammunition, or "posed a substantial risk of death or bodily injury to multiple individuals." § 2K2.1 comment. (n.16). The application note permits an upward departure when large numbers of heavy weapons that endanger the public safety are used. In this case there is the use of only one gun against an individual or two. Mr. Raimondi insists that his conduct was not so extreme that the possession of a handgun potentially endangered a large number of individuals. The 2–level increase under § 2D1.1 was proper, he submits; the additional 3–level departure was not proper and should be reversed.

## 2.

As we noted previously, the government argued before the district court that it ought not depart upward. It contended that the two-level increase for possession of a weapon during a drug offense, provided by § 2D1.1, was intended to be interpreted broadly. Counsel for the United States noted that, when the Sentencing Commission has intended that sentencing decisions be premised upon more precise definitions of possession, it has explicitly provided for those more precise definitions.[9]

Before this court, the government asserts that the district court did not abuse its discretion in applying upward departures under § 5K2.0. It submits that, although the government did not ask for an upward departure (and, we might add, actually argued against it), the district court did not abuse its discretion by departing. Such an abuse occurs, it submits, only when no reasonable person would agree with the court.

The government claims the district court did not "sandbag" Mr. Raimondi by departing under § 2K2.1.[10] Rather, suggests the government, the district court merely referred to that provision to explain the extent of the departure and to link the departure bases with the guidelines structure. In deciding whether this case has features that put it outside the heartland, the district court focused on Mr. Raimondi's significant use of cocaine and his reckless use of his firearm. Relying on *United States v. Furkin*, 119 F.3d 1276, 1283 (7th Cir.1997), the government suggests that we inquire into whether the departure is "encouraged" or "discouraged" or "forbidden" within the structure of the guidelines. The government notes that, although the guidelines are silent on drug abuse as a basis of upward departure, drug use is highly correlated to an increased propensity to commit crime, *see* U.S.S.G. § 5H1.4, p.s.,[11] and Mr. Raimondi was using cocaine recklessly when he was waving the gun around. The court concluded that his cocaine abuse, combined with "aggravated use" of the Beretta, justified the upward departure. In short, the court found that the use of the gun was present to such an extraordinary degree—combined with the drug taking and braggadocio—that it was "outside the heartland" of situations encompassed

9. The United States pointed out that the guideline regulating the imposition of sentences in bank robbery situations, U.S.S.G. § 2B3.1, provides for different forms of possession from "brandishing" to "use" to "discharge."

10. The government also mentions § 2K2.4, but Mr. Raimondi never refers to that guideline in his briefs. The district court made one reference to it when it was considering the *amount* of departure—an issue not raised by Mr. Raimondi. Section 2K2.4 states: "If the defendant, whether

or not convicted of another crime, was convicted under 18 U.S.C. . . . . § 924(c), the term of imprisonment is that required by statute."

11. Section 5H1.4 of the Guidelines, a Policy Statement, in pertinent part provides:

> Drug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime.

within § 2D1.1, which punishes for possession of a weapon in drug deals.

The government notes that the conduct on which the court based Mr. Raimondi's upward departure was all conduct to which he had admitted under the plea agreement. Therefore, it submits, the court properly considered Mr. Raimondi's use of the weapon in connection with the drug crimes.

## B. Upward Departure Analysis

Congress has authorized a sentencing court to impose a sentence outside the guideline range when it determines that the case contains "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. In *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court set forth the analytical framework to be followed when evaluating whether an upward departure from the guideline range is appropriate.[12] The Court began with the Sentencing Commission's instruction to sentencing courts "to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *Id.* at 93, 116 S.Ct. 2035 (quoting

1995 U.S.S.G. ch. 1, pt. A, Intro. Comment. 4(b)). The Court then considered the contrary situation: "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.*

 Before a district court is permitted to depart, held the Supreme Court, "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.* at 98, 116 S.Ct. 2035. The Court noted that, except for the forbidden factors that must not be considered,[13] the guidelines do not "limit the kinds of factors ... that could constitute grounds for departure in an unusual case." *Id.* at 94, 116 S.Ct. 2035. The factors are categorized as encouraged,[14] discouraged[15] and unmentioned[16] bases of departure. A district court assessing whether particular factors are "present in some unusual or exceptional way" that would justify a departure should consider whether the features of the case before it are unusual or atypical and could be the basis for a departure. *Id.* at 95, 98, 116 S.Ct. 2035. Our court recently described the district court's duty when determining whether to depart:

---

**12.** In *United States v. Schulte*, 144 F.3d 1107, 1109 (7th Cir.1998), the court discussed in some detail the Supreme Court's approach in *Koon*.

**13.** Forbidden factors include race, sex, national origin, creed, religion, socio-economic status, drug or alcohol dependence, economic duress or lack of guidance as a youth. *See* U.S.S.G. §§ 5H1.4, 5H1.10, 5H1.12, 5K2.12. They can never be the basis for a departure. *See Koon*, 518 U.S. at 93, 95–96, 116 S.Ct. 2035.

**14.** Encouraged factors include the defendant's role in the offense, criminal history, and dependence on criminal activity for a livelihood. *See* U.S.S.G. §§ 5H1.7–5H1.9; *Koon*, 518 U.S. at 94–95, 116 S.Ct. 2035. Encouraged factors "are explicitly contemplated as grounds for departures." *Schulte*, 144 F.3d at 1109. The sentencing court is permitted to depart on the ground of an encouraged factor "if the applicable Guideline does not already take it into account." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035.

**15.** Discouraged factors include a defendant's age, education, family and community ties, employment record, and mental or emotional condi-

tions. *See* U.S.S.G. § 5H1.1–5H1.3, 5H1.5, 5H1.6, 5H1.11. These factors are not usually relevant to a departure decision. *See Koon*, 518 U.S. at 95, 116 S.Ct. 2035. "If a special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* at 96, 116 S.Ct. 2035.

**16.** "Unmentioned factors, by definition, do not receive any sort of explicit endorsement or prohibition in the Guidelines." *Schulte*, 144 F.3d at 1109. The Supreme Court explained: "If a factor is unmentioned in the Guidelines, the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)).

[N]o rigid rule exists for computing an upward departure. The law merely requires that district judges link the degree of departure to the structure of the Guidelines and justify the extent of the departure taken. To make its assessment, the district judge need only draw an analogy between the defendant's actions and the conduct discussed in the Guidelines.

*United States v. Scott*, 145 F.3d 878, 886 (7th Cir.1998) (citations omitted). We review a district court's departure decision under the abuse of discretion standard. *See Koon*, 518 U.S. at 99–100, 116 S.Ct. 2035; *see also Scott*, 145 F.3d at 886; *United States v. Carter*, 122 F.3d 469, 472 (7th Cir.1997).

Having set out the analysis we must follow, we now turn to Mr. Raimondi's challenge to the propriety of the district court's upward departure.

### 1. Grounds For Departure

■ The offense characteristic that triggers a two-level increase under § 2D1.1(b)(1) is the mere possession of a dangerous weapon. That sentence increase is applicable whenever a weapon is present "unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, comment. (n.3). Therefore the "heartland" of this guideline is the possession of a weapon. Here, the district court's proposed ground for departure was the substantial distinction it found between the possession of the handgun and the reckless, violent use of that weapon.

In the district court's view, Mr. Raimondi's aggravated use of his handgun in connection with the cocaine conspiracy—the brandishing and threatening use of the Beretta in drug transactions—removed this case from the heartland of typical cases covered by § 2D1.1 for possession of a weapon. The district court recognized that § 5K2.0 allows departure when the aggravating circumstances are not adequately taken into consideration by the guidelines. In this case, the court found, the uncontested facts demonstrated that there was an aggravated use of the weapon Mr. Raimondi possessed in connection with the cocaine conspiracy. The court reviewed in detail those circumstances in which Mr.

Raimondi brandished the Beretta and, threatening with it, demanded money owed from prior cocaine debts. The court also found that Mr. Raimondi used cocaine "to an extended degree himself" and was careless, reckless, and "in a position where he could have readily discharged the weapon." R.119 at 36. In essence, the court considered the defendant "out of control." Noting that Mr. Raimondi used the weapon not for protection but to invoke violence, the court believed that the admitted facts "demonstrated a substantial risk of bodily injury to multiple [individuals]" and, when combined with his heavy use of cocaine, his reckless and careless condition, his display of the weapon to a five year-old and his braggadocio, "confirm that the departure in this matter is appropriate." *Id.* at 36–37.

In evaluating the district court's decision to depart from the guidelines, we note that the grounds offered by that court were neither forbidden nor discouraged and that the factual bases it relied upon were acts that Mr. Raimondi had admitted. The record therefore supports the district court's thorough fact-finding. The court carried out "a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing," as the Supreme Court requires. *Koon*, 518 U.S. at 98, 116 S.Ct. 2035; *see also United States v. Porter*, 145 F.3d 897, 906 (7th Cir.1998) (deferring "to the more localized vantage point of the district judge, who is better positioned than we are to make the required factual comparison").

We agree that the "heartland" of § 2D1.1(b)(1), the set of typical cases embodying the conduct that § 2D1.1(b)(1) describes, is simply the possession of a dangerous weapon. Mr. Raimondi qualified for a two-point addition to his base offense level under § 2D1.1(b)(1) merely by possessing a weapon that was connected with the offense. The district court's assessment that Mr. Raimondi's violent, threatening and out-of-control use of the Beretta during his drug dealing was sufficient to take his case out of the heartland of § 2D1.1(b)(1) cases and its subsequent determination that such conduct provided an appropriate basis for departure

were well within its discretion. *Cf. United States v. King*, 150 F.3d 644, 651 (7th Cir. 1998) (finding no abuse of discretion in district court's upward departure for defendant's commission of five bank robberies while on supervised release) (citing cases); *Porter*, 145 F.3d at 906 (deferring to district judge's assessment that it is not commonplace to involve a minor in a mail fraud offense, holding that court did not abuse its discretion in finding that defendant's use of minor provided proper basis for departure).

We conclude that the district court, from its experienced vantage point, sufficiently presented the factual justification for its conclusion that this case falls outside the heartland of § 2D1.1(b)(1) cases and warrants an upward departure. We note, as well, that Mr. Raimondi's reliance on *United States v. Otis*, 107 F.3d 487 (7th Cir.1997), is misplaced. We remanded that case for resentencing because the district court failed to explain why the reasons it relied on for its upward departure made the case atypical and thus outside the guidelines' heartland. *See id.* at 490–91; *see also United States v. Almaguer*, 146 F.3d 474, 477 (7th Cir.1998) (holding that, because a felon in possession of a firearm under 18 U.S.C. § 922(g) necessarily must have possessed the weapon, upward departure for possession was not warranted; remanding because district court failed to make a finding that this case was atypical). In this case, in contrast, the district court stated its grounds for upward departure (aggravated use of a weapon, along with heavy use of cocaine, in connection with the offense of conviction), identified the features of the case that were unusual or exceptional, and then found that the factors existed to a degree not adequately taken into account by the guidelines. We believe the district court did not abuse its discretion in departing upward.[17]

█ Nor is there merit to Mr. Raimondi's claim that the district court desired to punish him for violating 18 U.S.C. § 924(c), an of-

fense for which he was not even indicted. The court stated its belief that Mr. Raimondi could have been, and perhaps should have been, charged under that armed career criminal statute; however, it explicitly announced that its decision to depart was based on "the fact that the guideline did not reflect the seriousness of that significant criminal activity in which this defendant was involved." R.119 at 37. Furthermore, at the time the district court rejected the plea agreement, it noted that, pursuant to U.S.S.G. § 1B1.4, a court could consider the defendant's background, character and conduct—including criminal conduct not taken into account as a result of the plea agreement.[18]

It was within the district court's discretion to consider Mr. Raimondi's admitted criminal conduct involving the Beretta. A sentencing court weighing whether to depart from the guidelines "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661. The commentary to § 1B1.4 adds that "Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence" and that a court is not precluded from considering criminal conduct that was not taken into account as a result of the plea agreement. U.S.S.G. § 1B1.4, comment. (backg'd). For instance, it is clear that "a sentencing court may consider conduct of which a defendant has been acquitted," *United States v. Watts*, 519 U.S. 148, ——, 117 S.Ct. 633, 636, 136 L.Ed.2d 554 (1997) (per curiam), or for which a defendant has not been charged, *see Witte v. United States*, 515 U.S. 389, 401, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). In fact, our circuit has noted that "the Supreme Court has consistently approved the use of virtually any conduct (uncharged, acquitted, or otherwise) in sentencing." *United States v. Porter*, 23 F.3d 1274, 1279 (7th Cir.1994) (citing *United States v. Masters*, 978 F.2d 281, 285

---

**17.** We note that Mr. Raimondi has not appealed the extent of the upward departure.

**18.** Because the record reflects that the district court did not enhance Mr. Raimondi's sentence on the ground that the government failed to

charge him under 18 U.S.C. § 924(c), we need not determine the applicability of *United States v. Thomas*, 961 F.2d 1110 (3d Cir.1992). *See infra* note 20.

(7th Cir.1992) (citing cases), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993)). We upheld an upward departure from U.S.S.G. § 5K2.6, p.s., and held that the sentencing court properly could consider that the defendant possessed a handgun when he committed the offense of conviction. *See United States v. Billingsley*, 115 F.3d 458, 466 (7th Cir.1997). We also upheld an upward departure based on relevant conduct, namely a death resulting from a drug buying trip that was not part of the charged conspiracy. *See United States v. Purchess*, 107 F.3d 1261, 1271-72 (7th Cir.1997). The sentencing court did not abuse its discretion in considering Mr. Raimondi's threatening use of a weapon during the commission of the cocaine conspiracy to which he pleaded guilty. Accordingly, we hold that the district court's upward departure was proper.

### 2. Notice

■■■■ Mr. Raimondi claims that the court failed to give him notice either of its intent to depart from the guidelines or of the grounds for the departure. Such notice is required by *Burns v. United States*, 501 U.S. 129, 138-39, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). As we explained in *United States v. Otis*, 107 F.3d 487 (7th Cir.1997), reasonable notice of the contemplated departure and of the specific grounds being considered is required so that a defendant's right to comment on sentencing matters is not rendered meaningless. *See id.* at 489 (citing *Burns*, 501 U.S. at 135-39, 111 S.Ct. 2182); *see also United States v. Johnson*, 53 F.3d 831, 833 (7th Cir.1995). In this case, the presentence report did not list factors that might warrant an upward departure, *see United States v. Ewing*, 129 F.3d 430, 436 (7th Cir.1997), and in fact the government argued against such a sentence increase.

Nevertheless, our review of the record dispels the viability of Mr. Raimondi's claim. First, he was provided with notice that a departure might be considered. On the first day of the sentencing hearing, the court initially stated its concern that the plea of guilty to only one count of the indictment might not "adequately reflect the seriousness of the actual offense behavior." R.118 at 5.

After pointing to specific paragraphs in the PSR reflecting Mr. Raimondi's egregious uses of his firearm in connection with his cocaine distribution, the court found that the remaining charge to which Mr. Raimondi had pleaded guilty in fact "does not adequately reflect the seriousness of the actual offense behavior." *Id.* at 7. On that ground it rejected the plea agreement; it then adjourned the hearing for a day to allow the defendant to reconsider his plea in light of the court's decision.

The next day, after Mr. Raimondi maintained his plea of guilty, the court then presented in detail the reasons it previously had suggested for considering an upward departure. It noted that there was "a substantial distinction between the possession of this weapon and the using of it," R.119 at 5, and that Mr. Raimondi's use of the Beretta in furthering the conspiracy was not within the heartland or set of typical cases embodying the conduct that the possession guideline § 2D1.1 describes, *see id.* at 7. The court then adjourned for eight days to allow the parties to respond to these considerations.

When the proceedings continued, both the government and the defendant argued that this case was not sufficiently unusual to set it apart from the set of typical drug cases in which courts would apply § 2D1.1(b)(1). The court disagreed; it noted that guideline § 1B1.4 permitted it to consider, for sentencing purposes, a defendant's background, character and conduct, including criminal conduct not taken into account as a result of the plea agreement. Concerning the appropriateness of an upward departure, the court noted its authority to depart, pursuant to § 5K2.0, if there are aggravating circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id.* at 31. It followed the course established in *Koon* for identifying the atypical case that would warrant departure. It then demonstrated, by reference to the facts in this case, that Mr. Raimondi's aggravated use of his Beretta was "outside the heartland" of possession cases found under § 2D1.1.

Mr. Raimondi submits that, even if a general notice concerning departure was adequate, the district court based its decision to depart specifically on application note 16 to U.S.S.G. § 2K2.1,[19] without giving any prior notice of that basis for the departure. Our examination of the sentencing transcript reveals that the court first referred to that guideline and its application note when discussing one of the relevant departure decisions it had reviewed, *United States v. Thomas*, 961 F.2d 1110 (3d Cir.1992).[20] In *Thomas*, the Third Circuit held that it was error to depart upward "to compensate for the government's decision not to charge Thomas with a more serious crime," *i.e.*, 18 U.S.C. § 924(c). *Id.* at 1120. The district court, noting the factual similarity of *Thomas* to this case, distinguished it in two ways. First, it noted that *Thomas* erred in concluding that "nowhere do the Guidelines permit consideration of uncharged offenses."[21] R.119 at 33. Second, it considered *Thomas'* conclusion that none of the four circumstances providing for an upward departure under § 2K2.1, application note 16, applied to Thomas' case and therefore there was no basis for the upward departure. The district court then looked more closely at application note 16 and commented that one circumstance in which an upward departure may be warranted under note 16 was when there was a risk of bodily injury to many individuals.

At that point, the court returned to its previous reasoning and distinguished between the possession of a weapon required under § 2D1.1 and the aggravated use of a weapon found in this case. It reviewed the uncontested facts set forth in the PSR concerning Mr. Raimondi's many threatening and reckless uses of the handgun when collecting drug debts. The court noted that Mr. Raimondi "purposely stirred violence" and "was in a position where he could have readily discharged the weapon," and concluded that "it is reasonable to assume that if left unchecked it indeed would have caused severe bodily harm." *Id.* at 36. On that basis, the court stated that it was "one of those 2K2.1 determinations." *Id.*

Although the district court indeed referred to § 2K2.1 and noted the language of one of the permitted reasons for upward departure described in application note 16, its mention of that guideline was an afterthought raised by the court's reading of *Thomas*, and was not the basis of its decision to depart. The court's concern, throughout the sentencing hearing, was that Mr. Raimondi, with his heavy use of cocaine and brandishing of a readily dischargeable weapon (even around a five year-old child), had rendered himself a serious danger to those around him, whether in the Lost Resort Tavern he and his father ran or at one of his popular parties or any-

19. As we noted above in footnote 8, § 2K2.1 is the general guideline that establishes levels of punishment for the unlawful possession of firearms. Application note 16 provides:

An upward departure may be warranted in any of the following circumstances: (1) the number of firearms significantly exceeded fifty; (2) the offense involved multiple National Firearms Act weapons ..., military type assault rifles, ...; (3) the offense involved large quantities of armor-piercing ammunition ...; or (4) the offense posed a substantial risk of death or bodily injury to multiple individuals.
U.S.S.G. § 2K2.1, comment. (n.1).

20. In *United States v. Thomas*, 961 F.2d 1110 (3d Cir.1992), the Third Circuit reversed an upward departure made, it believed, because the government had decided not to charge Thomas with the more serious crime of firearms possession. *See id.* at 1120. According to *Thomas*, "[i]t would be a dangerous proposition to allow district courts to base upward departures on crimes that were not actually charged." *Id.* at 1121. It is note-

worthy that the Third Circuit, in *United States v. Rudolph*, 137 F.3d 173 (3d Cir.1998), upheld a 2-level upward departure in the defendant's offense level based on uncharged conduct and held that, "to the extent that *Thomas* is inconsistent with [*United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)], *Watts* is controlling." *Rudolph*, 137 F.3d at 177 (citing *United States v. Baird*, 109 F.3d 856, 863 (3d Cir.) (holding that "conduct not formally charged ... can be considered at sentencing"), *cert. denied*, — U.S. —, 118 S.Ct. 243, 139 L.Ed.2d 173 (1997)). Two other circuits have disagreed with the *Thomas* holding. *See United States v. Ashburn*, 38 F.3d 803, 807 (5th Cir.1994) (en banc), *cert. denied*, 514 U.S. 1113, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Doe*, 18 F.3d 41, 45–46 (1st Cir.1994).

21. *See* discussion *supra* Part II.B.1, at 16–17; *see also* § 1B1.4 & commentary; § 5K2.0, p.s.; § 5K2.6, p.s.; *United States v. Watts*, 519 U.S. 148, —, 117 S.Ct. 633, 636, 136 L.Ed.2d 554 (1997); *Witte v. United States*, 515 U.S. 389, 401, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

where. The court justifiably believed that the uncontested facts "demonstrated a substantial risk of bodily injury" to many individuals. Nevertheless, the district court clearly based its decision to depart on its determination that Mr. Raimondi's case was outside the heartland of § 2D1.1 cases. We note as well that no objection was raised to the reference to the firearms guidelines and conclude that its reference to § 2K2.1 was not clearly erroneous.

From the beginning of the sentencing process, the court gave Mr. Raimondi clear notice of its intent to consider an upward departure and of its basis for the departure. We hold that notice was sufficient in all respects.

### Conclusion

We conclude that, in sentencing Mr. Raimondi for participating in a drug distribution conspiracy, the district court did not abuse its discretion in increasing Mr. Raimondi's sentence with an upward departure based upon his aggravated use of a firearm combined with his cocaine abuse. For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.